IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LYDELL MARVIN BEGAY, individually
and for and on behalf of LATISSA BEGAY,
a minor, and natural born daughter of
Lydell Marvin Begay; MARTIN ("MARTY")
BEGAY, individually, and
LORENE BEGAY, individually,**

      **Plaintiffs,**

vs.                   Civ. No.  15-500 JCH/SCY

**MEDICUS HEALTHCARE SOLUTIONS, LLC,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

   This matter is before the Court on Defendant's *Motion to Dismiss Counts III and IV of Plaintiff's Complaint* [Doc. 6] on the grounds that Plaintiff's causes of action for breach of contract and violation of the New Mexico Unfair Practices Act fail to state a claim under Rule 12(b)(6). After reviewing the motion, response, reply, and applicable legal authorities, the Court concludes that the motion should be granted in part and denied in part as further described herein.

## BACKGROUND

   This case arises from allegedly improper medical treatment at the Northern Navajo Medical Center ("NNMC") in Shiprock, New Mexico, in March of 2014. According to the Complaint, Defendant Medicus Healthcare Solutions, LLC ("Medicus") contracts with the United States Government to provide temporary physicians and staff to NNMC and other federal medical facilities. The Complaint [Doc. 1] states that on March 6, 2014, Plaintiff Lydell Begay

("Lydell"), an enrolled member of the Navajo Nation, visited the emergency room at NNMC complaining of dizziness, severe headaches, left-sided weakness, unsteadiness, and blurred vision. While he was there, Lydell was treated by Dr. Annicol Marrocco, a visiting physician who was recruited, screened, recommended, placed, housed, and paid by Medicus. Plaintiffs allege that at the time Medicus placed Dr. Marrocco at NNMC she was not licensed to practice medicine in New Mexico, and that prior to her placement she had been censured, disciplined, and fined by the medical boards of Florida, Pennsylvania, and New York. Furthermore, on May 13, 2013, during the time Dr. Marrocco worked at NNMC, the U.S. Drug Enforcement Agency issued a show cause order alleging that she knowingly and willfully violated certain regulations regarding the prescription of schedule II controlled substances. Finally, Plaintiffs assert that Dr. Marrocco provided Lydell with substandard care, negligently failing to diagnose and treat his serious neurological problems. This failure, they allege, led to Lydell's severe and permanent disabilities.

The Complaint sets forth five causes of action: medical negligence (Count I), direct liability negligence (Count II), breach of contract (Count III), violation of the New Mexico Unfair Practices Act (Count IV), and loss of consortium (Count V).

**LEGAL STANDARD**

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a). Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007), the Court must review the complaint to determine whether it " 'contains enough facts to state a claim to relief that is plausible on its face.' " *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "This pleading

requirement serves two purposes: to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (citation and internal quotation marks omitted). The Court must accept all well-pleaded factual allegations of the complaint as true. *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002). Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not be sufficient to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). *See also Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting *Twombly*, 127 S.Ct. at 1974) (internal citations and footnote omitted). Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. *See also Ridge at Red Hawk*, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.") (emphases in original). For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Kansas Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555). The standard will not be met where the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1248.

Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id*.

## DISCUSSION

### I.   BREACH OF CONTRACT (Count III)

In Count III of the Complaint, Plaintiffs assert that as a patient at NNMC, Lydell was a third party beneficiary of a contract between NNMC and Medicus in which Medicus promised to: provide thorough background investigation and research with respect to its physicians, provide "high quality" physicians to Medicus, and ensure that its physicians had adequate credentials and licenses. Doc. 1 at ¶ 50. Plaintiffs assert that as third party beneficiaries to that contract, they may sue for its breach. Medicus moves to dismiss the breach of contract claim on the grounds that Plaintiffs failed to allege sufficient facts to show that they are third party beneficiaries who have standing to enforce the alleged contract.

It is a general rule of law that one who is not a party to a contract cannot maintain suit upon it. *Fleet Mortg. Corp. v. Schuster*, 112 N.M. 48, 49, 811 P.2d 81 (1991) (citing *Staley v. New*, 56 N.M. 756, 250 P.2d 893 (1952)). However, a third party may be a beneficiary to a contract, and may have an enforceable right against a party to a contract. *Id*. at 49. Whether a party is a third-party beneficiary depends on if the parties to the contract intended to benefit the third party. *Id*. at 49-50; *see also Hoge v. Farmers Market & Supply Co. of Las Cruces*, 61 N.M. 138, 143, 296 P.2d 476 (1956). Such intent "must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." *Fleet Mortg*., 112 N.M. at 50 (citing *Valdez v. Cillessen & Son, Inc*., 105 N.M. 575, 581, 734 P.2d 1258 (1987)). "The paramount indicator of third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or

as a member of a class of beneficiaries." *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 581, 734 P.2d 1258, 1264 (1987). The burden is on the person claiming to be a third-party beneficiary to show that the parties to the contract intended to benefit him. *See Casias v. Continental Cas. Co.*, 1998-NMCA-083, ¶ 11, 125 N.M. 297, 960 P.2d 839. He may do so using extrinsic evidence if the contract does not unambiguously indicate an intent to benefit him. *See id.*; *Stotlar v. Hester*, 92 N.M. 26, 30, 582 P.2d 403, 407 (Ct. App. 1978).

In this case, the sole allegations specifically pertaining to the alleged contract between NNMC and Medicus are as follows:

> Defendant breached its contractual promises to NNMC, including its promises to: (i) provide thorough background investigation and research with respect to its physicians; (ii) provide "high quality" physicians to its clients; (iii) ensure that its physicians had adequate credentials and licenses.

Doc. 1 at ¶ 50. The Complaint also contains the conclusory allegation that "Lydell Begay was expressly or impliedly the intended beneficiary of Defendant's promises to provide, inter alia, adequately screened, 'high quality' physicians to the NNMC." *Id.* at ¶ 52. However, this is not a factual allegation, but merely the assertion of a legal conclusion, and therefore the Court cannot consider it on a motion to dismiss for failure to state a claim. The Complaint contains no other allegations regarding the alleged contract between NMCC and Medicus that would shine light on the contract's terms.[1]

Here, neither party has provided the Court with the actual contract between Medicus and NNMC. Rather, Plaintiffs have alleged the existence of a contract between NNMC and Medicus

---

[1] The only other allegations in the Complaint that might conceivably relate to the terms of the alleged contract fall under a heading titled "Defendant's Promised Services." However, all of these alleged promises are merely public statements made on the Medicus website regarding the company's services. *See* Doc. 1 at ¶ 12-16. Without more, the Court cannot and will not construe statements on a website as enforceable promises in the alleged contract between NNMC and Medicus.

in which Medicus agreed to provide NNMC with high quality physicians who are properly credentialed and who have undergone thorough background checks. They have also alleged that Medicus failed to fulfill those promises when it sent Dr. Marrocco—a doctor against whom numerous allegations of misconduct had been made and who lacked a license to practice in New Mexico—to NNMC. They have also alleged that Lydell received negligent medical care from Dr. Marrocco at NNMC. Although it is a very close call, the Court concludes that at this early stage Plaintiffs have alleged sufficient facts to meet their burden to show that in entering their alleged contract NNMC and Medicus intended to benefit them, either as individuals or as members of a larger class. *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 581, 734 P.2d 1258, 1264 (1987).

  The Court is persuaded, in part, by the New Mexico Supreme Court's decision in *Callahan v. New Mexico Federation of Teachers-TVI*, 139 N.M. 201, 208 (2006), in which the court decided whether the plaintiff union members were third party beneficiaries of a collective bargaining contract between the union and plaintiffs' employer. Without closely analyzing the terms of the contract, the court reasoned that the employer and the union "clearly intended to benefit Plaintiffs, as public employees" and members of the union, which itself exists to serve the interests of its members. *Id*. The same is true here. NNMC, like any other hospital, exists to serve the medical needs of its patients, and logic dictates that parties to a contract to find high quality physicians to serve those patients with the patients' benefit in mind. The provision of medical treatment to patients goes to the core service the hospital provides and its reason for existence. In other words, the very nature of the contract itself suggests that Plaintiffs are third party beneficiaries.

This case is distinguishable from the cases cited by Medicus. For example, in *Montoya v. Espanola Pub. Sch. Dist. Bd. of Educ.*, 861 F. Supp. 2d 1307 (D.N.M. 2012), the parents of students claimed that their children were third party beneficiaries to a contract between the school district and a security company it hired to help "promote a safe, secure learning environment." *Id*. at 1311.  In granting the defendant's motion to dismiss, the court analyzed the language of the contract, which evidenced no express intent to benefit the students directly. The court acknowledged that students, faculty, and staff "end up benefitting from Defendants carrying out their duties under the contract," *id*., but the language of the document itself showed them to be mere incidental beneficiaries. *Id*. at 1312. In contrast, in this case there is no contract language to analyze, leaving the Court to accept the Complaint's allegations regarding the contract's terms as true for purpose of the motion. Further, this Court notes that the purpose of the *Montoya* contract—provision of security services—while important, is ancillary to the plaintiff students' main purpose for being at school, *e.g*., the receipt of educational services. That is not true in this case, where the purpose of the contract is to provide medical care to patients, the sole reason that Lydell and other patients go to NNMC. Other cases upon which Medicus relies, such as *Oetting v. Wehbe*, 1997 WL 33354408 (Mich. Ct. App. Feb. 14, 1997) (unpublished) (granting summary judgment based on explicit terms of the contracts at issue, which included a statement in medical services agreement that it conferred no rights or benefits to any person not a party to it), *Bozeman v. Hernando County*, 548 So.2d 300 (Fla. Ct. App. 1989) (granting motion to dismiss patient's breach of contract claim based on employment contract between hospital and allegedly negligent doctor and finding, without explanatory reasoning, that patients were at most incidental third party beneficiaries), and *Daniel Boone Clinic, P.S.C. v. Dahhan*, 734 S.W.2d 488 (Ky. Ct. App. 1987) (concluding that patients had no

7

enforceable rights under employment contract between doctor and clinic, which contained covenant not to compete that patients sought to invalidate) are from other states and are not binding precedent in this case, which is under New Mexico law.

Of course, discovery in this case may reveal information about the specific language of the contract and the intent of the parties thereto. In that event, the Court could revisit the issue on a motion for summary judgment. But for now, the Court concludes that Plaintiffs have alleged sufficient facts to survive a motion to dismiss their claim for breach of contract.

## II.  VIOLATION OF NEW MEXICO UNFAIR PRACTICES ACT (Count IV)

In Count IV of the Complaint, Plaintiffs allege that Medicus publicly advertised and promised that the physicians it places and employs at hospitals such as NNMC have been properly interviewed, screened, and vetted, and that such physicians—including Dr. Marrocco— were "high quality" doctors practicing under unrestricted licenses. Doc. 1 at ¶ 62. Plaintiffs allege that Medicus' statements with respect to Dr. Marrocco's qualifications were false, deceptive, and misleading. *Id*. They further allege that Medicus' placement of Dr. Marrocco, who does not meet the above criteria, at NNMC was an unfair or deceptive trade practice for which Medicus is liable under various sections of the New Mexico Unfair Practices Act ("UPA"), including NMSA 1978, §§ 57-12-2(D)(2) ("causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services"); (D)(3) ("causing confusion or misunderstanding as to affiliation, connection or association with or certification by another"); (D)(5) ("representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has sponsorship, approval, status, affiliation or connection that the person does not have"); (D)(7) (representing that goods or services are of a particular standard, quality or grade or that goods are

of a particular style or model if they are of another"); and (D)(17) ("failing to deliver the quality or quantity of goods or services contracted for"). Medicus moves to dismiss Plaintiffs' UPA claim on the grounds that the statements from the Medicus website upon which Plaintiffs rely do not support a claim under the UPA because the cited language is either (1) mere "puffery" or too vague to support a UPA claim, or because (2) the UPA does not apply to claims based on alleged professional negligence or malpractice.

### A. UPA Claims Generally

"The UPA provides individual and class action remedies for unfair, deceptive, or unconscionable trade practices." *Valdez v. Metro. Prop. & Cas. Ins. Co.*, 2012 WL 1132414, at *19 (citing *Quynh Truong v. Allstate Ins. Co.*, 147 N.M. 583, 590, 2010-NMSC-009, ¶ 22). "Generally speaking, the UPA is designed to provide a remedy against misleading identification and false or deceptive advertising." *Lohman v. Daimler–Chrysler Corp.*, 142 N.M. 437, 442, 2007-NMCA-100, ¶ 22.

> New Mexico courts have established that a claim under the UPA has four elements:
>
> First, the complaining party must show that the party charged made an oral or written statement, visual description or other representation that was either false or misleading. Second, the false or misleading representation must have been knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or collection of debts. Third, the conduct complained of must have occurred in the regular course of the representer's trade or commerce. Fourth, the representation must have been of the type that "may, tends to or does, deceive or mislead any person."

*Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100, 1991-NMSC-051, ¶13, 811 P.2d 1308, 1311 (N.M. 1991) (alterations omitted) (internal quotation marks omitted). *See Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶¶ 20-38, 166 P.3d 1091, 1093 (N.M. Ct. App. 2007) (applying the same elements in analyzing a UPA claim). Notably, a plaintiff need not prove detrimental reliance upon the defendant's representations to state a plausible UPA claim;

9

the UPA permits recovery "even if the conduct only tends to deceive." *Lohman*, 2007-NMCA-100, ¶ 35 (internal quotation marks omitted). Section 57-12-2(D) also lists examples of conduct that could violate the UPA, including "using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive." NMSA 1978, § 57-12-2(D)(14).

### B.     Puffery and Vagueness

New Mexico courts have said little regarding the nature of vagueness and puffery in the context of the UPA. In *Grassie v. Roswell Hospital Corp.*, the New Mexico Court of Appeals relied on a decision from a federal district court in New York to explain them, albeit in *dicta*:

> Vagueness is distinct enough from the concept of puffery to require an argument based on its particular features. *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004) (mem. & order) ("Puffery is a somewhat amorphous concept . . . defined alternately as 'an exaggeration or overstatement expressed in broad, vague, and commendatory language' . . . and as an 'exaggerated, blustering, and boasting statement upon which no reasonable buyer would rely.' " (citation omitted)).

*Grassie v. Roswell Hosp. Corp.*, 150 N.M. 283, 258 P.3d 1075, 1095 (Ct. App. 2010). Thus, for more explanation of these terms, the Court turns to opinions from other federal courts.[2]

"Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) (holding that the claim that motor oil provided "longer engine life and better engine protection" was not puffery); *see also Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390-91 (8th Cir. 2004) ("Puffery exists in two general forms: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims

---

[2] Section 57-12-4 of the UPA expressly provides that in construing Section 3, which prohibits unfair or deceptive trade practices, "the courts to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts."

of product superiority, including bald assertions of superiority."). Several courts have concluded that bald assertions constitute puffery if they are so sufficiently general that a consumer is unlikely to rely on the statement. *See, e.g., Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245-46 (9th Cir. 1990) (holding that statement "we're the low cost commercial collection experts" was puffery despite implication that defendant provided comparable services at lower rates than attorneys operating in same industry); *Procter & Gamble Co. v. Kimberly–Clark Corp.*, 569 F. Supp. 2d 796, 799 (E.D. Wisc. 2008) ("When an advertiser claims his store [ ] has the 'lowest' prices or [best product], no one expects that consumers will take his claim at face value[.]"); *Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics*, 905 F.Supp. 169, 182 (S.D.N.Y. 1995) (holding that statements such as "most cost-effective prices" and "subscription prices as low as possible" were mere puffery).

The term puffery is used to characterize those vague generalities that no reasonable person would rely on as assertions of particular facts. *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009). *See also Fed. Express Corp. v. U.S. Postal Serv.*, 40 F. Supp. 2d 943, 954-55 (W.D. Tenn. 1999) ("Because statements of puffery are so broad in scope, so general in nature and so exaggerated in content that no reasonable person would rely upon them, a defendant cannot be held liable for 'puffing' under the Lanham Act.").

The specificity of the statements at issue is relevant to whether they constitute puffery. In *Sterling Drug, Inc. v. Federal Trade Commission*, 741 F.2d 1146, 1150 (9th Cir. 1984), the court described puffery in advertising to be "claims [which] are either vague or highly subjective." "The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assumptions." *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990).

Finally, the Tenth Circuit has pointed out that "[i]n determining whether a statement is puffery, the context matters." *Alpine Bank*, 555 F.3d at 1106-07. The court pointed out that factors such as the relative expertise of the speaker and the listener as well as the size of the audience bear on the issue. *Id*. "What is said to a particular person may take on meaning that would not be present if made to a large group. Thus, mass advertising expressed in vague terms (as in political campaigns) is not relied on by rational adults." *Id*. "[F]alse advertising law defines the puffery defense categorically [as] claims 'not capable of measurement' that 'consumers would not take seriously.'" David A. Hoffman, *The Best Puffery Article Ever*, 91 IOWA L. REV. 101, 108 (2006). In contrast, factual statements are actionable. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495-96 (5th Cir. 2000) (concluding that if a statement is "mere puffery," it cannot constitute a statement of fact and therefore cannot serve as the basis for a false advertising claim under the Lanham Act).

Here, the Plaintiffs allege that the following statements from the Medicus website form the basis of their UPA claim: that Medicus (1) is "laser focused on quality," (2) "constantly ensure[s] that [it is] producing quality solutions that meet [a healthcare facility's] particular goals," (3) believes "accountability is the key to creating long-term partnerships with our key stakeholders, providers, and clients," (4) "will ensure that [its healthcare facility clients] have the high-quality medical staff [they] need," and (5) "maintain[s] a deep understanding of government specific credentialing and background investigation processes." Doc. 1 at ¶¶ 12-14. Plaintiffs also paraphrase—but do not directly quote—Medicus thusly: "Defendant further promises to its clients that it will place physicians who have an unrestricted medical license in at least one of the 50 states and that it will perform a thorough background check and investigation on all its physicians." Doc. 1 at ¶ 14.

The Court concludes that the numbered statements one through five above are puffing because of their broad, vague language. These statements consist of exaggerations or boasts on which no reasonable consumer would rely. Phrases like, "laser-focused on quality," and "quality solutions," are not measurable standards and are so broad that one would not reasonably rely upon them. Similarly, asserting that "accountability is key" is a vague boast, not a promise as to the specific quality of a product or service. The same is true of the fifth enumerated statement regarding Medicus' "deep understanding" of the medical credentialing process. Finally, the statement that Medicus will ensure that its medical facility clients will have the "high quality" medical staff they need is also quite vague and broad. The phrase "high quality" is quite subjective, such that it is incapable of serving as the source of a claim under the UPA. As a result, to the extent that Plaintiffs are asserting a UPA claim based on any of those statements, the claim is dismissed under Rule 12(b)(6).

Plaintiffs' final assertion is a different matter. Plaintiffs do not quote from Medicus' website, but they allege in their Complaint that "Defendant further promises to its clients that it will place physicians who have an unrestricted medical license in at least one of the 50 states and that it will perform a thorough background check and investigation on all its physicians." This claim is significantly more concrete than the vague boasts described in the previous paragraph. Whether or not a physician has an unrestricted medical license in at least one state at the time Medicus places her at a hospital is subject to verification. And though whether or not Medicus has performed a background check that is "thorough" is somewhat less concrete, the Court deems it sufficiently specific when read in conjunction with that statement about unrestricted medical licenses. Because this is a motion to dismiss and not a motion for summary judgment, the Court accepts as true Plaintiffs' allegation as to the contents of Medicus' representation. This

statement is not vague puffery, and the motion to dismiss the UPA claim stemming from the statement will not be dismissed.

### C.     Immunity for Professional Negligence or Malpractice

Medicus argues that Plaintiffs' UPA claim must be dismissed because it does not apply to claims based on alleged professional negligence or malpractice. For this argument, Medicus relies on the New Mexico Court of Appeals opinion in *Grassie v. Roswell Hosp. Corp*., 150 N.M. 283, 258 P.3d 1075, 1095 (Ct. App. 2010). In that case, a patient's estate sued a hospital asserting that the emergency room medical staff was medically negligent, that the hospital was negligent in allowing the treating physician to practice in its facility, and that the hospital misrepresented its emergency room services to the public contrary to the UPA. The court observed that "case law across the country holds that unfair practice statutes only apply to the entrepreneurial, commercial, or business aspect of a physician's practice, including advertising, solicitation of business, and billing practices." *Id*. The New Mexico court relied particularly on *Quimby v. Fine*, 45 Wash. App. 175, 724 P.2d 403, 406 (1986), in which the court held that a claim under a consumer protection statute that was based on the same facts as the medical negligence claim could not go forward because it related to the actual competence of the physician defendant. In *Quimby*, the UPA claim related to a claim of lack of informed consent, which may be based on dishonest promotion of the entrepreneurial aspect of the doctor's practice and failure to advise the patient of risks. *Id*. Thus, concluded *Quimby*, "[t]he inquiry thus hinges on whether the medical negligence and UPA claims are coterminous or indistinguishable; that is, whether they rely on the same facts and rely on a judgment as to the 'actual competence of the medical practitioner' for resolution. *Grassie*, 258 P.3d at 1095 (quoting *Quimby*, 724 P.2d at 406). If so, a UPA claim is not appropriate. *Id*. at 1095-96. In *Grassie*, the plaintiff alleged that

14

the hospital's advertising of its "team of trained physicians, nurses and technicians," as well as of its goal to provide constant access to "qualified physicians" suggested that it was in charge of its emergency room, a representation belied by the fact that the hospital did not control how the allegedly negligent doctor dealt with patients and exercised clinical judgment. *Id*. at 1096. In concluding that the UPA claim should go forward, the *Grassie* court reasoned that resolution of whether the hospital's advertising statements were misleading did not depend on the actions of the medical staff when treating the decedent. *Id*.

Here, the single allegedly misleading statement that remains in the case is that Medicus "will place physicians who have an unrestricted medical license in at least one of the 50 states and that it will perform a thorough background check and investigation on all its physicians." Whether or not Medicus' actions matched this alleged promise is a matter that is independent of Dr. Marracco's actions in treating Lydell—that is, the status of Dr. Marrocco's license and the nature of the background check Medicus performed are facts that are separate from the question of whether Dr. Marracco was medically negligent on March 6, 2014. Accordingly, the motion to dismiss on this ground will be denied.

**IT IS THEREFORE ORDERED** that Defendant's *Motion to Dismiss Counts III and IV of Plaintiff's Complaint* [Doc. 6] is **GRANTED IN PART** and **DENIED IN PART**, and a portion of Plaintiffs' claim under the New Mexico Unfair Practices Act is dismissed as explained in detail above.

_____
**UNITED STATES DISTRICT JUDGE**